# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUSSELL W. CHEATER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-14-524-FHS-KEW ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Plaintiff Russell W. Cheater (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on October 6, 1974 and was 39 years old at the time of the ALJ's latest decision. Claimant completed his high school education. Claimant has worked in the past as a fork lift driver. Claimant alleges an inability to work beginning May 1, 2008 due to limitations resulting from chest pain, low back pain, migraine headaches, leg pain, heart and breathing problems, and

3

mental health problems.

**Procedural History**

On May 20, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. After an administrative hearing, the Administrative Law Judge ("ALJ") entered an unfavorable decision on January 6, 2011. On appeal, the decision was reversed and the case was remanded for further proceedings by Order entered September 26, 2013.

On April 24, 2014, ALJ Bernard Porter conducted a second administrative hearing in Fort Smith, Arkansas. On October 3, 2014, the ALJ again entered an unfavorable decision. Claimant failed to file exceptions to the decision with the Appeals Council. The decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly evaluate Claimant's impairments in light of the listings; (2) reaching an improper RFC determination; and (3) making an improper finding at step five.

**Evaluation for a Listing**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, hypertension, depressive disorder, congestive heart failure, atrial fibrillation, chronic obstructive pulmonary disease, cariomyopathy, and angina. (Tr. 663). The ALJ concluded that Claimant retained the RFC to perform sedentary work. In so doing, the ALJ found Claimant could occasionally climb ramps and stairs, but could never climb ladders or scaffolds. He could never crawl. He should not work at unprotected heights or around moving mechanical parts and must avoid environments with concentrated exposure to humidity, wetness, dust, fumes, or gases. Claimant should avoid environments with temperature extremes. He was limited to simple tasks and simple work -related decisions. Claimant could have frequent interaction with supervisors, co-workers, and the public. He required a sit/stand option that allowed for a change of position at least every 30 minutes, with brief positional changes lasting no more than two to three minutes.

Time off task would be accommodated by normal breaks. (Tr. 665).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform the representative jobs of eyeglass frame polisher, cuff folder, and optical goods final assembler. (Tr. 673). As a result, the ALJ found Claimant was not disabled from May 1, 2008 through December 31, 2012, the date last insured. (Tr. 674).

Claimant first contends the ALJ did not properly evaluate his impairment of congestive heart failure for a listing, specifically Listing 4.02. At step three of the sequential evaluation, an ALJ is required to determine whether a claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) citing Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ is required to discuss the evidence and explain why he found Claimant was not disabled at step three. Id. The ALJ's consideration of Listing 4.02 consists of the following statement:

> Claimant's heart problems have been evaluated in accordance with Listing 4.00 et seq., however, his heart impairments do not meet the requirements of those listings.

(Tr. 663).

6

As Claimant indicates, she meets at least some of the evidentiary medical requirements for this listing in that her end diastolic dimension is 6.0 cm or enlarged left atrium is 4.5 cm. (Tr. 279). The ALJ's explanation of his assessment for this listing is simply insufficient. He does not set forth the medical evidence he considered and does not explain how that evidence is deficient or outside the requirements for the listing. On remand, the ALJ shall explain his consideration for this listing.

### RFC Determination

Claimant asserts the ALJ improperly rejected all of the medical opinion evidence. On March 3, 2011, Dr. Terry Hoyt completed a physical RFC assessment. He found Claimant could sit up to 30 minutes and stand/walk up to 20 minutes at one time, and sit up to 3 hours, walk up to 1 hour and stand up to 2 hours during an 8 hour workday. He determined Claimant needed an assistive device to stand, walk, and balance and needed rest breaks every hour or less. He could frequently lift 0-5 pounds and occasionally lift 6-10 pounds. (Tr. 851). He could occasionally work in an extended position but rarely above shoulder level or overhead. He could never reach. Dr. Hoyt estimated Claimant could rarely grasp or finger/fine manipulation and rarely bend, squat, crawl, stoop, crouch, or kneel. (Tr. 852). Dr. Hoyt concluded Claimant has

history of pulmonary disease and congestive cariomyapathy and chronic atrial fibrillation. He suspected Claimant had anxiety/depression due to being afraid of having a heart attack if he overexerts. Dr. Hoyt stated Claimant was unable to maintain gainful employment. (Tr. 853).

The ALJ gave Dr. Hoyt's opinion "little weight" because it "provided little insight regarding how he assessed these limitations, other than stating that claimant had poor physical conditioning and history of heart problems and back pain." The ALJ found Dr. Hoyt's opinion to not be consistent with Claimant's longitudinal treatment notes. (Tr. 670).

On February 24, 2011, Dr. Patricia Walz completed a mental RFC form on Claimant. She found Claimant was severely limited in the functional areas of carrying out detailed or complex instructions; performing activities within a schedule; maintaining regular attendance; completing a normal workday and workweek; performing at a consistent pace; performing without an unreasonable number or length of rest periods; and demonstrating reliability. She also found Claimant was markedly limited in the areas of understanding detailed or complex instructions; remembering detailed or complex instructions; carrying out very short and simple instructions; maintaining attention for extended periods of time; maintaining

8

concentration for extended periods of time; being punctual within customary tolerances; sustaining an ordinary routine without special supervision; and working in coordination or proximity to others without being distracted by them. In addition, Dr. Walz found Claimant to be moderately limited in an additional twenty other functional areas. (Tr. 840-43).

Dr. Walz also performed a mental diagnostic evaluation of Claimant. Upon examination, Dr. Walz made detailed findings from Claimant's statements to her, a review of his medical record, and her own observations. She diagnosed Claimant with depression secondary to medical condition (chronic pain; heart condition), rule out borderline intellectual functioning (she estimated his intellectual functioning in the 75 to 85 range), and assigned a GAF of 45-50 based on suicidal ideation. She found no evidence of malingering or exaggeration. (Tr. 844-49)

The ALJ gave Dr. Walz's opinion "little weight" stating the Claimant's treating history only consisted of an anti-depressant with no referral for formal mental health care. The ALJ rejected Dr. Walz's GAF, as a matter of policy by the Commissioner, and because he believed it was not reflective of Claimant's overall functioning according to his treatment record. (Tr. 670).

The ALJ is required to consider every medical opinion in

9

reaching his assessment and must provide specific, legitimate reasons for rejecting an opinion. <u>Doyal v. Barnhart</u>, 331 F.3d 758, 764 (10th Cir. 2003). The ALJ acknowledged that Claimant was hospitalized for congestive heart failure in September of 2007 but that, after treatment, his echocardiogram indicated ejection fraction in the normal range of 50%. It also indicated an enlarged left atrium which sill be addressed when the ALJ re-evaluates Claimant's qualification for a listing. (Tr. 279, 667). He also recognized the treatment records that indicated Claimant underwent relatively conservative treatment with anticoagulants. (Tr. 667). His pulmonary function studies indicated in October of 2009 that he did not have a significant degree of obstructive pulmonary impairment and/or restrictive ventilator defect. (Tr. 466-69). Claimant received anti-depressants but little additional mental health treatment. (Tr. 668). The ALJ rejected the state agency opinions which indicated Claimant could perform at a light work level. (Tr. 668-69).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." <u>White v. Barnhart</u>, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing

how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

Claimant also challenges the ALJ's credibility analysis. In large measure, the ALJ rejected Claimant's statements of limitation as being unsupported by the medical record. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such,

11

will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. In this case, the ALJ properly linked his findings on credibility to the medical record. No error is attributed to his analysis.

## Step Five Analysis

Claimant contends the ALJ's hypothetical questioning of the vocational expert did not include all of his limitations since his RFC did not include the restrictions found by Drs. Hoyt and Walz. Since this Court found no error in the consideration of these

12

opinions, no error is found in the questioning of the vocational expert.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the case REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE